UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES JOSEPH LAWSON,

               Plaintiff,               Case No. 1:09-cv-551

v.                                           Honorable Paul L. Maloney

BRIAN HADDON et al.,

               Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kenneth McKee, (Unknown) Stoddard, Scott Schooley, (Unknown) Rose, (Unknown) Carpenter, Rufus Wright, (Unknown) Pong, Brian Haddon and K. Simmons. The Court will serve Plaintiff's Eighth Amendment medical claims against Defendants Scott Holmes and Claude Rogers.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff is presently incarcerated at the Ionia Maximum Correctional Facility but complains of events that occurred at the Bellamy Creek Correctional Facility (IBC). In his *pro se* complaint, Plaintiff sues the following IBC employees: Assistant Resident Unit Manager Brian Haddon[1], Warden Kenneth McKee, Deputy Warden (Unknown) Stoddard, Assistant Deputy Warden Scott Schooley, Resident Unit Manager (RUM) (Unknown) Rose, Dr. Scott Holmes, Grievance Coordinator (Unknown) Carpenter, Psychologist Claude Rogers, Officer (Unknown) Pong, RUM Rufus Wright, and Assistant Health Unit Manager K. Simmons for violating his rights under the First Amendment, Eighth Amendment and Fourteenth Amendment. Plaintiff also asserts several state law claims.

First, Plaintiff alleges that his transfer between prisons violated his due process rights. On June 5, 2007, the Michigan Department of Corrections (MDOC) transferred Plaintiff from Security Level II at the Kinross Correctional Facility (KCF) to Security Level IV at IBC to protect Plaintiff because his uncle is a federal judge. (Attach. to Compl. at 5, docket #1.) Due to the transfer, Plaintiff is locked down twenty-three hours per day in a cell, which measures 8 by 10 feet; Plaintiff is unemployed; Plaintiff has been denied programming, psychological groups, counseling services, religious worship and recreational opportunities; Plaintiff's visitation hours decreased to two hours a week; and Plaintiff lost certain privileges such as a storage locker and hobby craft. On June 12, 2007, Plaintiff attempted to file a grievance but Defendant Carpenter "pretextually" rejected

---

[1] Plaintiff spells Defendant's name as Haddon and Hadden in the complaint. For purposes of this opinion, the Court refers to this Defendant as Defendant Haddon.

his grievance to conceal "the underlying constitutional and MDOC policy-procedure violations." (*Id.* at 6.)

Second, Plaintiff claims that several Defendants failed to protect Plaintiff in violation of his Eighth Amendment rights. On June 30, 2007, prisoners, who learned about Plaintiff's uncle, began shouting in their cells that Plaintiff had to "leave the yard," or they were "going to assault" Plaintiff. (*Id.*) The next day, Defendant Pong opened the prison doors for the "restricted medication line" with the help of Hines.[2] (*Id.* at 7.) Two inmates walked out of their cell and began hitting Plaintiff with their fists and a weapon. Plaintiff suffered head trauma as a result of the assault. The inmates also broke Plaintiff's glasses. After the assault, Hines escorted Plaintiff to a nurse. Plaintiff was then sent to the hospital. Defendant Holmes examined Plaintiff, applied sutures, and ordered a Computerized Axial Tomography (CAT) scan and pain medication. Plaintiff claims that Defendant Holmes ordered pain medication even though Plaintiff's medical file stated that he was allergic to that pain medication. A nurse subsequently ordered a new pain medication.

Third, Plaintiff argues that he was placed in administrative segregation when he returned to prison without any due process. After leaving the hospital, Defendant Haddon initially ordered Plaintiff to return to his unit even though one of his attackers was still housed in the unit. Plaintiff refused to return to the housing unit. As a result, Defendant Haddon placed Plaintiff in administrative segregation. Plaintiff argues that he never received any due process before he was sent to administrative segregation. (*Id.* at 8.)

---

[2]Plaintiff references Hines as a Defendant when discussing the facts of his complaint. (Attach. to Compl. at 7, docket #1.) Plaintiff, however, did not list Hines as a party in the complaint. (Compl. at 2, Attach. to Compl. at 2-5, docket #1.) Therefore, this Court will not consider Hines as a Defendant in this opinion.

Fourth, Plaintiff states that Defendants Holmes and Rogers failed to provide him with adequate medical care in violation of his Eighth Amendment rights. Following the assault, Plaintiff suffered "migraine headaches, petit mall [sic] seizures, blurred vision in the right eye, muscular atrophy on the right side of the face, couldn't speak, [and] suffer[ed] extreme pain." (*Id.*) On July 2, Dr. Holmes examined Plaintiff again. Plaintiff requested that Dr. Holmes take photographs, prepare a MDOC Critical Incident Report, and refer him to a neurologist to no avail. The hospital had recommended that Plaintiff be examined by a neurologist. (*Id.* at 9.) Plaintiff continues to suffer "debilitating headaches, seizures, tremors and vision problems" from the attack. (*Id.*) On July 2, Psychologist Rogers examined Plaintiff but allegedly refused to treat Plaintiff's depression, post traumatic stress disorder, anxiety and night terrors. Plaintiff also claims that Defendant Rogers violated his privacy rights by talking about Plaintiff's medical issues in the hallway.

Fifth, reading Plaintiff's *pro se* complaint liberally, Plaintiff appears to allege that Defendants retaliated against him by transferring him to IBC and by issuing two misconduct tickets to Plaintiff in violation of his First Amendment rights. *See Haines*, 404 U.S. at 520. On April 4 and 21, 2008, Defendant Haddon allegedly instructed a couple corrections officers to write two misconduct tickets against Plaintiff for Disobeying a Direct Order so Plaintiff would have to be returned to the same unit as the prisoners who assaulted him. The hearing officer eventually found Plaintiff not guilty of those two misconduct tickets. (Attach. to Compl. at 9.)

Finally, Plaintiff argues the following state law claims: (1) Defendant Holmes engaged in medical malpractice; (2) Defendant Stoddard failed to conduct the "post incident review" required by "IBC OP 01.05.120;" and (3) Defendant Rogers violated Plaintiff's privacy rights. (*Id.* at 8-11.)

For relief, Plaintiff requests compensatory and punitive damages and injunctive relief. (*Id.* at 11.)

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    A.    **Due Process**

Plaintiff argues that Defendants violated his due process rights (1) by transferring him to a higher security level prison and (2) by placing him in administrative segregation without any hearing.

    1.    Procedural Due Process

To state a procedural due process claim under § 1983, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999). In *Sandin v. Conner*, 515 U.S. 472, 486 (1995), the Supreme Court held that the only liberty interest a prisoner may protect through § 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

    a.    Transfer

Plaintiff complains that his transfer from KCF to IBC and the resulting increase in his security classification from Security Level II to Security Level IV[3] and loss of several privileges violated his due process rights. Plaintiff has no constitutional right to any particular placement or security classification. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State." *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also*

---

[3]The MDOC security classifications, from least to most secure, are as follows: Levels I, II, III, IV, V and segregation. Mich. Dep't of Corr., Policy Directive 05.01.130, ¶ B (effective Dec. 31, 2007).

*Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). A change in security classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin*, 515 U.S. at 486; *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir.1995); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997). The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody*, 429 U.S. at 88 n.9; *Meachum v. Fano*, 427 U.S. 215, 244 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (a prisoner's increase in security classification for his designation as a member of a security threat group failed to state a due process claim "because a prisoner has no constitutional right to a specific security classification"); *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). In the absence of a recognized liberty interest, placing Plaintiff in a higher security level facility or increasing his security classification raises no issue of constitutional magnitude. Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because, "process is not an end in itself." *Olim*, 461 U.S. at 250.

The Supreme Court, however, held in *Wilkinson v. Austin*, 545 U.S. 209, 230 (2005), that a prisoner's transfer to a "supermax" facility was sufficiently atypical to implicate the Due Process Clause because the conditions at the "supermax" facility were far more restrictive than any other form of incarceration in Ohio, including conditions on death row. In *Wilkinson*, the Court stressed that "[u]nlike the 30-day placement [in segregation] in *Sandin*, placement at [the super-max prison] is indefinite," limited only by an inmate's maximum prison term, and "disqualifies an otherwise eligible inmate for parole consideration," thus potentially extending the length of his incarceration. *Id.* at 224.

*Wilkinson* is factually distinguishable from the present case in three ways. First, the MDOC transferred Plaintiff to IBC, a Security Level I, II and IV facility, rather than a "supermax" facility. As stated above, the MDOC security classifications, from least to most secure, are as follows: Levels I, II, III, IV, V and segregation. *See* MICH. DEP'T. OF CORR., Policy Directive 05.01.130, ¶ B. At the time of the transfer, Plaintiff's security classification was Level IV. (Attach. to Compl. at 5.)

Second, Plaintiff's confinement at Security Level IV does not approach the extreme conditions of the Ohio "supermax" facility (OSP) in *Wilkinson*.

> Conditions at OSP are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units . . . . In OSP almost every aspect of an inmate's life is controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
>
> Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or

> communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls . . . .

*Wilkinson*, 545 U.S. at 214-15 (citations omitted). In his complaint, Plaintiff does not allege any facts indicating that conditions at IBC are as nearly restrictive or onerous as those at OSP. For example, Plaintiff does not allege that he was denied communication with other prisoners, he was subject to a light illuminating his cell all day and every day, he was limited to indoor recreation time for one hour per day, or he had to eat alone in his cell. In contrast to the "rare" visitation hours at OSP, Plaintiff received two hours of visitation a week at IBC. *Id.*; (*see also* Attach. to Compl. at 6.) Plaintiff merely complains of losing his prison job, programming and property privileges because of his transfer. Plaintiff, however, does not have a liberty interest in prison jobs or programs.[4]

Third, placement in the Ohio "supermax" facility is indefinite, limited only by an inmate's maximum prison term, and, after an initial 30-day review, is reviewed annually. Placement in the Ohio "supermax" facility also disqualifies an otherwise eligible inmate for parole consideration. *Id.* In his complaint, Plaintiff does not allege that his confinement was indefinite or effected his parole eligibility. Notably, Plaintiff is presently incarcerated at Ionia Maximum Correctional Facility rather than IBC. Because Plaintiff's prison conditions are not "outside the

---

[4]Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g.*, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) ("[N]o constitutional right to vocational or educational programs").

realm of what is to be expected of prison life," *Sandin*, 515 U.S. at 485, Plaintiff's complaint fails to state a procedural due process claim for his transfer to IBC.

b. <u>Administrative Segregation</u>

Plaintiff also fails to implicate a liberty interest for Plaintiff's placement in administrative segregation without a hearing.[5] In *Rimmer-Bey*, 62 F.3d at 790-91, the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and a hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. The Sixth Circuit has repeatedly found that confinement to segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey*, 62 F.3d at 790-91 (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey*, 111 F.3d at 460 (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Without a protected liberty interest, Plaintiff cannot successfully claim that his due process rights were violated.

---

[5]The Court notes that Plaintiff is not complaining of the duration of his time in administrative segregation. The Sixth Circuit has recognized that duration alone may, in extreme circumstances, cause administrative segregation to rise to the level of an "atypical and significant" deprivation that implicates a protected liberty interest. *See Harden-Bey v. Rutter,* 524 F.3d 789, 793 (6th Cir. 2008) (holding that allegations in which a prisoner has been indefinitely confined to administrative segregation, without a hearing, for more than three years states a procedural due process claim).

2. Substantive Due Process

The Substantive Due Process Clause also does not provide any basis for relief for Plaintiff. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey*, 62 F.3d at 791 n.4 (citing *Rochin v. California*, 342 U.S. 165 (1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). The MDOC transferred Plaintiff to IBC and Defendants placed him in administrative segregation for his protection. Providing for the protection of Plaintiff does not meet the formidable standard. Accordingly, Plaintiff's allegations fail to state a claim that his substantive due process rights were violated.

B. **Eighth Amendment - Failure to Protect**

Plaintiff claims that Defendants failed to protect him from the prisoners who assaulted him. The Cruel and Unusual Punishments Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Trop v. Dulles*, 356 U.S. 86 (1958). The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

When determining whether a prison officials conduct falls below this standard, the Court employs a two prong test containing an objective and a subjective component. The objective component considers whether the alleged deprivation was sufficiently serious, whereas the

subjective component examines the official's state of mind to determine whether he acted with "deliberate indifference" to inmate health or safety. *Id*.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes*, 452 U.S. at 346). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

If the objective test is satisfied, the Court must then determine whether the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the official deliberately indifferent to Plaintiff's health or safety. *Id.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that the prison official acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude that the official "was subjectively aware of the risk and disregard [ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

Plaintiff has failed to demonstrate that Defendants acted with deliberate indifference towards his safety. In his complaint, Plaintiff states that several prisoners threatened Plaintiff on June 30, 2007. The next day, two inmates began hitting Plaintiff with their fists and a weapon while the cell doors were open for the restricted medication line. Defendant Pong opened the cell doors while Hines observed the prisoners. In his complaint, Plaintiff does not allege that he notified Defendant Pong of the prisoners' threats on June 30 or July 1. Moreover, Plaintiff does not allege that the two prisoners attempted to assault him in the past or had a history of assault on other prisoners. In light of Plaintiff's allegations, Defendant Pong could not have known that those two prisoners would assault Plaintiff. Thus, Plaintiff cannot show that Defendant Pong violated his Eighth Amendment rights by failing to protect him. *See Lewis v. McClennan,* 7 F. App'x 373, 375 (6th Cir. 2001) (Plaintiff failed to establish an Eighth Amendment claim when he only alleged a hypothetical risk of danger to his safety prior to the attack); *Ross v. Parke,* No. 88-5365, 1988 WL 104933, at *1 (6th Cir. Oct. 11, 1988) (Plaintiff did not establish a failure to protect claim under the Eighth Amendment when defendants did not know nor were they informed by plaintiff that another inmate was a potential assailant.)

C. **First Amendment - Retaliation**

Plaintiff alleges that Defendants violated his rights under the First Amendment. (Attach. to Compl. at 10-11.) Plaintiff, however, did not elaborate on how Defendants violated his First Amendment rights. Because Plaintiff references Defendants "evil motive or intent," it appears that Plaintiff is arguing that Defendants retaliated against him by (1) transferring him to IBC, and by (2) writing misconduct tickets against Plaintiff. (Attach. to Compl. at 10.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See*

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

1. Transfer

Reading Plaintiff's complaint liberally, Plaintiff appears to allege that his transfer to IBC violated his First Amendment right against retaliation. *See Haines*, 404 U.S. at 520. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, filed grievances against Defendants *after* he was transferred to IBC. As a result, Plaintiff cannot show that his transfer to IBC was an adverse action taken against him for filing a grievance.

Moreover, Plaintiff does not allege that his access to the courts was compromised as

a result of the transfer to IBC; he only alleges that he lost his job, was denied programming, psychological groups, counseling services, religious worship,[6] recreational opportunities and certain privileges. If a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). As stated above, Plaintiff does not have a federally cognizable liberty interest in participating in educational programs or to prison employment. *See, e.g.*, *Newsom*, 888 F.2d at 374; *Ivey*, 832 F.2d at 955; *Moody*, 429 U.S. at 88 n.9; *Antonelli*, 81 F.3d at 1431; *Rizzo*, 778 F.2d at 531; *Carter*, 1998 WL 69810, at *2; *Tribell*, 1994 WL 236499, at *1. Under these authorities, Plaintiff has no constitutional claim arising from his transfer to IBC. Therefore, Plaintiff fails to state a First Amendment claim for retaliation based on his transfer.

## 2. Misconduct Tickets

Reading Plaintiff's *pro se* complaint liberally, *see Haines*, 404 U.S. at 520, Plaintiff appears to claim that Defendant Haddon violated his First Amendment rights by having other officers issue two misconduct tickets against Plaintiff. Plaintiff, however, does not allege what protected conduct motivated Defendant Haddon's retaliation. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v.*

---

[6]Petitioner does not describe how he was denied "religious worship." (Attach. to Compl. at 6, docket #1.) Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-950; *Twombly*, 550 U.S. at 555.

*Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Ashcroft*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Haddon retaliated by having other officers file two misconduct tickets against Plaintiff. Accordingly, Plaintiff's speculative allegation fails to state a claim.

### D. Warden McKee, Deputy Warden Stoddard, Assistant Deputy Warden Schooley and Grievance Coordinator Carpenter

#### 1. Failure to Prosecute

In his complaint, Plaintiff claims that Warden McKee, Deputy Warden Stoddard and Assistant Deputy Warden Schooley violated his constitutional rights because they failed to conduct a criminal investigation and to pursue criminal charges in response to his assault. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Simply put, Plaintiff cannot compel a criminal prosecution of

other prisoners because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004). Therefore, Plaintiff fails to state a claim against Defendants McKee, Stoddard and Schooley for failing to conduct a criminal investigation and to pursue criminal charges in response to his assault.

2. Respondent Superior

Plaintiff argues that Grievance Coordinator Carpenter erroneously rejected Plaintiff's grievance. Plaintiff also appears to allege that Defendants McKee, Stoddard and Schooley are liable for the acts of their employees. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed

to allege that Defendant Carpenter as well as Defendants McKee, Stoddard and Schooley engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

E.  **Resident Unit Managers Rose and Wright, and Assistant Health Unit Manager Simmons**

Plaintiff does not make any factual allegations whatsoever against Defendants Rose, Wright and Simmons in his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995) (where complaint failed to allege wrongdoing by a particular defendant, it fell "far short of the standard that is necessary to weed out meritless actions"), *overruled in other part*, *Goad v. Mitchell*, 297 F.3d 497, 502-03 (6th Cir. 2002). Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *Ashcroft*, 129 S. Ct. at 1949-950; *Twombly*, 550 U.S. at 555. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"); *see also Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-273 (W.D. Mich 1991). Plaintiff's allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff, therefore, fails to state a claim against Defendants Rose, Wright and Simmons.

F.  **State Law**

Plaintiff alleges the following state law claims: (1) Dr. Holmes engaged in medical malpractice by failing to treat Plaintiff's medical needs adequately; (2) Defendant Stoddard failed to conduct a 'post incident review" required by "IBC OP 01.05.120;" and (3) Defendant Rogers failed to protect Plaintiff's privacy rights. (Attach. to Compl. at 8-11.) Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). These claims will be dismissed without prejudice.

G.  **Service**

Plaintiff argues that Defendants Holmes and Rogers were deliberately indifferent to his serious medical and mental health needs. At this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient to state an Eighth Amendment medical claim against Defendants Holmes and Rogers.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that the claims against Defendants Kenneth McKee, (Unknown) Stoddard, Scott Schooley, (Unknown) Rose, (Unknown) Carpenter, Rufus Wright, (Unknown) Pong, Brian Haddon and K. Simmons will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's Eighth Amendment medical claims against Defendants Scott Holmes and Claude Rogers.

An Order consistent with this Opinion will be entered.


Dated: July 16, 2009                    /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                Chief United States District Judge