UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| JAMES JOSEPH LAWSON, # 235155, | )<br>) |
| Plaintiff, | )  Case No. 1:09-cv-551<br>) |
| v. | )  Honorable Paul L. Maloney<br>) |
| SCOTT HOLMES, M.D., et al., | )  **REPORT AND RECOMMENDATION**<br>) |
| Defendants. | )<br>) |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint concerns conditions of his confinement at the Bellamy Creek Correctional Facility (IBC). The defendants are Scott Holmes, M.D., and social worker Claude Rodgers. Plaintiff alleges that on July 1, 2007, he was assaulted by another IBC inmate and that he sustained head injuries. Further, he alleges that defendant Holmes refused to refer him to a neurologist and that defendant Rodgers refused to treat him for post-traumatic stress disorder, anxiety, and night terrors. Plaintiff seeks an award of monetary damages and injunctive relief.

The matter is now before the court on defendants' motions for summary judgment based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) before filing this lawsuit. (docket #'s 33, 47). Plaintiff has filed his response (docket #'s 37, 51, 57), and defendants' motions are ready for decision. I recommend that defendants' motions for summary judgment be granted and that all plaintiff's claims against defendants be dismissed without prejudice for failure to exhaust his available administrative

remedies as required by 42 U.S.C. § 1997e(a). An order implementing these recommendations should be entered and the court should enter a separate and final judgment closing this case.

**Summary Judgment Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Synbrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Reed v. International Union, United Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009).

Where, however, a moving party with the burden of proof seeks summary judgment, he faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same).

Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to defendants' motions for summary judgment because lack of exhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense.

**Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendants Holmes and Rodgers have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies, and they seek dismissal of plaintiff's claims on that basis. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only

the exhausted claims. 549 U.S. at 219-24. Claims that are not fairly presented through the grievance process remain unexhausted.[1]

Further, in order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *See Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. *Id.* at 90-93; *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).

All versions of MDOC Policy Directive 03.02.130 in effect on and after April 28, 2003, have required that the prisoner name within the body of his grievance the person whose conduct is challenged. In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

---

[1] "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a full and fair opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the prisoner's grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id*. The inmate submits the grievance to a designated grievance coordinator, who determines whether it should be rejected under MDOC policy or assigns it to a respondent. *Id.* at ¶¶ W, X. Prisoners are required to use "a Prisoner/Parolee Grievance (CSJ 247A) [form] to file a Step I grievance." *Id.* at ¶ R. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Regional Health Administrator is the Step II respondent for a grievance regarding health care issues. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). "The BHCS Administrator shall ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner." *Id.* Time limitations

shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing ...." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004).

## Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff is an inmate in the custody of the Michigan Department of Corrections. Scott Holmes, M.D., and Claude Rodgers, a clinical social worker, are employed by the State of Michigan at the Bellamy Creek Correctional Facility (IBC). On July 1, 2007, plaintiff was involved in an altercation with another IBC inmate. Plaintiff reported that the other inmate had punched him.

1. Medical Care

Plaintiff suffered a small laceration in the area of his right eyebrow and a slight cut inside his right cheek. Plaintiff was treated by a nurse who cleaned the laceration with soap and water and applied a sterile dressing. Plaintiff was transported to Ionia County Memorial Hospital where he was examined, treated, and discharged later that same day. CT scans of plaintiff's head and maxillary sinuses returned normal results.[2]

Dr. Holmes examined plaintiff on the morning of July 2, 2007. Plaintiff had a black eye and his right cheek was swollen. Dr. Holmes gave plaintiff Ultram for pain relief. Plaintiff states that on July 2, 2007, social worker Rodgers "came to see plaintiff and refused to treat the seriousness of [plaintiff's] mental injuries, including, but not limited to depression, post traumatic stress disorder, anxiety, [and] night terrors." (docket # 1, ¶ 34).

On July 5, 2007, plaintiff reported that he had a headache, was dizzy, his eyesight was blurry and his speech was "thick." Dr. Holmes found that plaintiff's gait was normal. His reflexes were normal. His brain functions were normal. Dr. Holmes offered to provide plaintiff with a prescription for Antivert to address plaintiff's subjective complaints. Plaintiff related similar complaints on July 24, 2007. Dr. Holmes found no objective evidence supporting plaintiff's complaints. He offered plaintiff Naprosyn and noted that plaintiff had a pending optometry appointment.

On September 12, 2007, plaintiff reported to Dr. Holmes that Inderal treatment was providing him with relief from his headaches. Plaintiff related that he had been examined by an optometrist who found nothing wrong with his eye. Dr. Holmes noted that plaintiff has a significant

---

[2]Plaintiff's medical records are found in docket entry 57.

history of narcotic abuse, at one point in his life taking over 30 Vicodin tablets per day. Plaintiff asked to see a neurologist. Dr. Holmes found that a referral to a neurologist would not be helpful: "clinically, the patient demonstrates no clear reason for his persistent right eye squinting."

Joseph M. Chung, M.D., and William R. Yee, M.D., provided plaintiff's mental health care. Dr. Chung prescribed Sinequan for plaintiff's anxiety and insomnia. On September 5, 2007, Dr. Chung increased the dosage of plaintiff's medication in response to his complaints. Dr. Chung conducted a follow-up examination on September 13, 2007. Claude Rodgers met with plaintiff for weekly segregation evaluations from February 15, 2008, through May 22, 2008. On March 27, 2008, Rodgers recorded that plaintiff remained medication and treatment compliant. Plaintiff's difficulties had significant "characterological features." Plaintiff continued to blame others for his thoughts and behaviors. On April 7, 2008, Rodgers noted that plaintiff was "perceived as an individual with a sense of entitlement and pursues his own needs, often at the expense of others." On April 21, 2008, plaintiff was voluntarily discharged from the outpatient mental health program he had been participating in since June 6, 2007. On August 14, 2008, Dr. Yee conducted a comprehensive psychiatric examination. He reported that plaintiff had been "off medications since the middle of April 2008 and [was] stable and asymptomatic and qualif[ied] for release from psychiatric services in November of 2008."

2. Grievances

A. Dr. Scott Holmes

On September 12, 2007, plaintiff filed grievance number IBC-2007-09-2667-28i against defendant Holmes. The grievance was rejected at Step I. Under policy directive 03.02.130,

plaintiff was required to make a valid attempt at resolution of the issue before filing his grievance. Plaintiff appealed this decision through Step III where the rejection of the grievance was upheld. (docket # 47, Ex. A, Attachment 3).

On March 12, 2008, plaintiff filed another grievance against defendant Holmes. It was assigned number IBC-2008-03-652-28f. The grievance was rejected at Step I because plaintiff was on modified access to the grievance process and had filed his grievance in violation of the requirements of Policy Directive 03.02.130. The rejection of the grievance was upheld at Steps II and III of the grievance appeals process. (docket # 47, Ex. A, Attachment 4).

### B.  Claude Rodgers

Plaintiff did not file any grievance or appeal corresponding to his allegations against defendant Rodgers. (docket # 34, Ex. 1, Rodgers Aff. ¶ 5; Ex. 2, Richard Stapleton Aff. ¶¶ 13- 15). Plaintiff filed his complaint on June 15, 2009.

**Discussion**

**1.**

"The exhaustion provision of the PLRA states: 'No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.'" *Jones v. Bock*, 549 U.S. at 204 (quoting 42 U.S.C. § 1997e(a)). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. In order for a claim to be exhausted, it must be fairly presented to prison officials through the grievance process. *Woodford*, 548 U.S. at 94. In addition, the PLRA

exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90.

The two grievances that plaintiff filed did not exhaust his administrative remedies against defendant Holmes. Both grievances were rejected because plaintiff did not comply with the MDOC's procedures. The initial grievance was rejected because plaintiff did not make the required attempt to resolve this matter before filing his grievance. The second grievance was rejected because plaintiff was on grievance restriction status and he did not comply with the procedures that a prisoner on grievance restriction must comply with before filing a grievance. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

Plaintiff did not file any grievance against defendant Rodgers, nor did he pursue it through a Step III decision. Plaintiff's assertion that he filed a grievance with someone at Community Mental Health regarding Rodgers (Plf. Brief at 1, docket # 37) does not suffice. Arguments presented in a party's brief are not evidence. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). I find that all plaintiff's claims against defendants remain unexhausted. *See Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("*Woodford* makes clear that a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance.").

The only remaining question is whether the dismissal should be with or without prejudice. Generally, the dismissal of claims for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) is without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th

Cir. 2006). Defendants have not presented any developed argument why dismissal with prejudice would be appropriate.

It is virtually certain that any grievance plaintiff might now file against defendants would be rejected as untimely at Step I, and upheld on that basis at Steps II and III. A grievance so rejected would provide a basis for dismissing plaintiff's claims with prejudice because "proper exhaustion still requires compliance with the grievance policy's critical procedures such as timeliness." *Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (stating that dismissal for failure to exhaust is without prejudice and does not bar the reinstatement of the suit, unless it is too late to exhaust)). However, the Sixth Circuit's recent decision in *Reed-Bey v. Pramstalller* suggests that the court should not anticipate a future events, but should instead wait and see whether the State actually enforces its procedural rules. 603 F.3d at 325-26.

**2.**

I recommend that the portion of defendant Holmes's motion seeking dismissal of plaintiff's complaint for failure to state a claim under Rule 12(b)(6) be denied. On July 16, 2009, the court conducted initial screening of plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. 1997e(c) and found that plaintiff's complaint alleged an Eighth Amendment claim against defendant Holmes. (docket # 5). Plaintiff has not altered his complaint. There is no reason for a result contrary to the court's earlier determination.

**Recommended Disposition**

For the foregoing reasons, I recommend that the portion of defendant Holmes's motion seeking dismissal of plaintiff's complaint for failure to state a claim under Rule 12(b)(6) (docket # 47) be denied. I further recommend that defendants' motions for summary judgment (docket #'s 33, 47) be granted and that all plaintiff's claims against defendants be dismissed without prejudice for failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). The court should enter an order implementing these recommendations and a final judgment closing this case.


Dated: June 2, 2010                /s/ Joseph G. Scoville
                                   United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).